UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO. 9:07-cv-81113-KAM

IN RE PEGASUS WIRELESS
CORPORATION SECURITIES LITIGATION

**LEAD PLAINTIFF'S MOTION FOR AN ORDER PERMITTING
ALTERNATIVE MEANS FOR SERVICE OF PROCESS
AND INCORPORATED MEMORANDUM OF LAW**

**Motion**

Lead Plaintiff the Pournaras Group moves this Court for an Order providing for the following:

1. Permitting Lead Plaintiff to effect service upon Defendants Jasper Knabb and Stephen Durland through two alternative means: (1) Publication in accordance with Florida Statute § 49.011(11), allowing for service of process by publication in cases "in which personal service of process or notice is not required by the statutes or constitution of this state or by the Constitution of the United States;" and (2) service

        through the delivery of a summons and a copy of the complaint to Pegasus Wireless Corporation's bankruptcy counsel, Kevin C. Gleason.

2.   Granting any other relief the Court deems proper to effect service of process upon the unserved defendants, including but not limited to service of process according to Fed. Rules Civ. P. Rule 4(f)(3) allowing service of process on an individual located outside of the United States.

In support of this Motion, Lead Plaintiff submits the declarations of David A.P. Brower and Kim E. Miller, dated May 1, 2008, the incorporated Memorandum of Law, and all other papers and prior proceedings herein.

## Memorandum of Law

Lead Plaintiff the Pournaras Group has effected service of process upon Defendants Pegasus Wireless Corporation ("Pegasus"), Alex Tsao, Douglas Hirsch, Eric Lutz, Nicholas Peraticos and Pollard-Kelley Auditing Services, Inc.  However, despite repeated diligent attempts, Lead Plaintiff has been unable to effect service of process upon the remaining Defendants, including, Jasper Knabb and Stephen Durland, who are alleged to be the key wrongdoers in this action.

For this reason, Lead Plaintiff respectfully requests that this Court enter an Order permitting alternative means to serve process upon Defendants Knabb and Durland, who clearly have knowledge of the complaint against them in this litigation as discussed herein but nevertheless have successfully evaded service to date.  For the reasons discussed herein, Lead Plaintiff respectfully requests permission to serve defendants Knabb and Durland via publication (according to Florida Statute § 49.011), and/or service by delivering a summons and a copy of the complaint to Pegasus' bankruptcy counsel, Kevin Gleason, P.A., who is in contact with both

2

Knabb and Durland. Further, Lead Plaintiff requests any additional relief this Court deems proper to effect service of process upon Defendants Knabb and Durland, including but not limited to service of process according to Fed. Rules Civ. P. Rule 4(f)(3) allowing service of process on an individual located outside of the United States.[1]

## DEFENDANTS JASPER KNABB AND STEPHEN DURLAND'S ALLEGED CENTRAL INVOLVEMENT IN THE SECURITIES FRAUD

Pegasus was formed in May 2005 and quickly acquired a company called OTC Wireless, where defendant Jasper Knabb had previously been a managing director. It was in connection with the OTC Wireless transaction that Knabb became associated with the Company. Prior to joining Pegasus, Knabb was a Managing Director at OTC Wireless, the President of Wireless Frontier, Inc., and he founded and became the President of Beach Access, a privately held Internet Service Providing company. (¶¶ 33-34).[2]

In truth, however, Knabb's history with OTC Wireless, Wireless Frontier and Beach Access—and his close business ties with convicted felons and securities fraudsters—were significantly more complicated and questionable than Defendants disclosed in the Company's SEC filings. (¶ 35). At no time during the Class Period did Defendants disclose the manner in which Knabb financed the acquisition of tens of millions of dollars in Company stock he purported to purchase prior to and during the Class Period. In total, Knabb reported to the Securities Exchange Commission ("SEC") that he had purchased more than $26 million in Pegasus shares between the beginning of 2005 and the end of the Class Period. In fact, little if

---

[1] Lead Plaintiff previously made a motion to extend the service of process deadline for all unserved defendants by 60 days, and for additional relief. The Court granted the motion in part, allowing Plaintiff to have the additional 60 days, which expired on March 28, 2008. Lead Plaintiff was able to serve two additional defendants during that time period.

[2] All "¶ __" references are to the *Pournaras v. Pegasus Wireless Corp.* (07-cv-81113) complaint.

anything about Knabb's personal finances or his ability to pay for $26 million in Company stock was disclosed to investors by the Company. (¶¶ 36-37)

On August 4, 2006, Defendants also announced the issuance of a special dividend to shareholders of record as of August 11, 2006. (¶ 72). This "share dividend" was not offered to reward the long-suffering shareholders of the Company, but rather constituted an ill-conceived scheme to further manipulate the price of Pegasus stock by eliminating phantom "short-sellers," who Knabb repeatedly but baselessly claimed had sold stock in the Company that did not exist. (¶ 74). Thus, despite the fact that no evidence existed to support Knabb's theory that Pegasus shares were oversold by tens of millions of shares, and despite evidence that supports the proposition that managers who lose focus over their business and chose to pursue phantom causes—such as naked short sellers—tend to underperform the market, the complaint alleges that Defendant Knabb engineered this manipulative offering. The offering resulted in a loss of corporate focus and waste of corporate assets, and, as investors ultimately learned, this offering did little or nothing to reduce the justifiably large short-interest in Pegasus stock. (¶ 75)

On August 24, 2006, investors were shocked and alarmed by a report published by *The MotleyFool.com*, entitled *"Don't Bet on This Horse."* This report portrayed Knabb as a serial penny stock manipulator, and also exposed the myriad of undisclosed related party transactions between the Company and parties with current or former associations to Knabb. (¶¶78-79)

The *MotleyFool.com* report also exposed a host of undisclosed material adverse information about defendant Durland, including a history of involvement with failed and suspect ventures. For example, the report indicated that Durland was CFO and then acting CEO of a company called Medical Makeover Corporation of America, which appears to have shared an office with DP Martin and Associates, which paid penny-stock promoters to "fluff" Medical

4

Makeover's shares. Both firms were represented by an attorney named Donald Mintmire, who was "disbarred following a federal conviction on obstruction related to a Florida pump and dump scheme." (¶ 80) In fact, "Twenty-seven companies that have been audited by Durland & Company, CPAs, a firm run by Stephen Durland…whose company served as PGWC's former auditor, have also been legally represented by convicted felon Donald F. Mintmire, Esq., or his law firm, Mintmire & Associates." (¶ 87)

On September 3, 2006, the Pegasus Yahoo.com message-board posted an Asensio Capital Management report titled, *"PGWC Links To The Corporate Scandal of the Century."* This report documented the relationship of Pegasus and Knabb to a notorious Taiwanese stock manipulator named Hung Chiu-Hu, and to one of the Company's major investors, Vision 2000 Ventures, run by Chiu-Hu. (¶ 88). News of this once again caused the price of Pegasus shares to plummet, and by September 20, 2006, shares of the Company traded just over $1.00 each.

That day, Defendants published a release that revealed that Pegasus Board of Directors had "decided to amend" the previously announced sale of shares of common stock to Defendant Knabb. The Company stated that it would return to Knabb almost $7 million that was previously reported to have been paid to Knabb by Pegasus to cover the cost of the sale of these shares to Knabb. (¶ 90) Despite the Company's willingness to give Knabb almost $7 million in cash, it does not appear that Pegasus received any consideration for this valuable concession. In addition, a review of the Company's 2Q:06 Form 10-QSB, filed with the SEC on or about July 25, 2006, appears to show that Knabb had never even paid the original $10 million—the majority of which the Company claimed it was "returning" to Knabb. (¶ 91)

Within days, Pegasus shares traded even lower after the Company announced on September 25, 2006, that Defendants would voluntarily remove Pegasus from the Nasdaq Market

Exchange. While Knabb described this move as being in the "best interests" of the Company's shareholders, analysts were not convinced, stating, "why Knabb, or anyone else for that matter, believes that moving the stock to a less liquid market can possibly help with volatility is beyond comprehension." (¶ 92)

With the shady business dealings of Defendants Knabb and Durland now exposed to investors, shares of Pegasus stock, which traded at $18 per share as late as May of 2006, are currently trading for less than one one-thousandth of a cent, and the Company is now on the brink of bankruptcy. (*See* Voluntary Petition of Bankruptcy attached to Declaration of Kim E. Miller in Support of Lead Plaintiff's Motion for an Order Permitting Alternative Means For Service of Process ("Miller Decl.") at Exhibit A)

## LEAD PLAINTIFF'S SERVICE OF PROCESS

Upon its appointment as Lead Counsel, Kahn Gauthier Swick, LLC conducted extensive research and investigation to attempt to locate the current whereabouts of each Defendant for purpose of service. At the time Lead Plaintiff requested that this case be transferred, Pegasus was located in Palm Beach, Florida. During its investigation, however, Lead Plaintiff discovered that Defendants had relocated their facilities out of the United States and into the Bahamas. Further, Lead Plaintiff soon discovered that Defendants had abandoned the Company's Freeport, Grand Bahama facilities (*see* Miller Decl. at Exhibit B). The Nassau Guardian reported that the Company's Bahamas plant had been labeled a "ghost town," with its parking lot virtually empty, telephone services disconnected for more than three weeks, and Pegasus CEO Defendant Jasper Knabb's cellular phone no longer in service. In fact, on September 27, 2007, the Court granted Pegasus counsel's motion to withdraw as counsel because Pegasus failed to maintain communication with its attorneys or pay its attorneys' fees and costs. These revelations are clear

evidence of the Defendants' complete intention to avoid service of process, and this litigation in its entirety.

At this time, Lead Plaintiff has effected service of process on Defendants Pegasus, Alex Tsao, Douglas Hirsch, Eric Lutz, Nicholas Peraticos and Pollard-Kelley Auditing Services, Inc. However, despite repeated attempts, Lead Plaintiff has been unable to effect service of process upon the remaining seven defendants. As detailed herein, Lead Counsel now seeks alternative means to serve Defendants Knabb and Durland.

### A. Attempts at service since extension to serve granted

On January 28, 2008, upon Lead Plaintiff's Motion for Extension of Time to Effect Service of Process And Permission to Effect Constructive Service of Process Upon Certain Defendants, this Court granted Lead Plaintiff an additional 60 days to effect service of process upon the unserved defendants. Since filing the Motion, Lead Counsel were able to effect service upon two additional Defendants: Alex Tsao and Nicholas Peraticos. However, despite its best efforts, Lead Plaintiff has been unable to serve the remaining seven unserved defendants.

#### 1. Attempts to serve Defendant Jasper Knabb

In addition to the six attempts made to serve Defendant Knabb in December of 2007 at 3528 Golf Avenue, Little River, SC 29566, two more attempts were made in January of 2008, but the process server could not effect service. (Miller Decl. Exhibit C). On January 19, 2008, the process server attempted to serve Defendant Knabb at both 172 and 200 Freeman Road, Carthage, NC, but found that the Defendant was unknown at the addresses and likely moved without leaving a forwarding address. (Miller Decl. Exhibit D) Another address located as belonging to Defendant Knabb--1000 S. Pointe Dr., PH 3702, Miami Beach, FL 33139—was

found to be not only incorrect, but is also the address listed for Defendant William Horn. Further intensive attempts to locate Mr. Knabb through the media and investigators have proven futile.

### 2. Attempts to serve Defendant Stephen Durland

Multiple attempts were made to effect service on Defendant Durland. Initially, service was attempted at Defendant Durland's business (Durland & Co.), located at 340 Royal Palm Way, Ste. 210 Palm Beach, FL 33480. (Miller Decl. Exhibit E). The process server found the area inaccessible due to construction on the building.

Then, on January 2, 2008 at 5:40 pm, an attempt was made at a home address located at 4916-E Tower Road, Greensboro, NC 27410. The server saw no vehicle outside, did not get an answer at the door, and stated that the unit was dark and it did not appear anyone was inside. Another attempt was made on January 3, 2008 at 7:01 pm. Once again, there was no answer at the door and there were no vehicles parked outside. On January 4, 2008 at 9 pm, the server found no vehicle outside and no answer at the door. On January 5, 2008 at 8:15 pm, another attempt was made. The Defendant did not appear to be home and the server contacted the neighbor who said that the Defendant is only home 3-4 times a month on the weekends and spends most of his time in Florida. A final attempt was made at the same address on January 11, 2008 at 7:15 pm, but the server did not find anyone home. (Miller Decl. Exhibit F).

Subsequently, service was attempted on Defendant Durland on January 30, 2008 at an address known to be for Durland & Company CPA's, 52 Yacht Club Dr, Apt 304, North Palm Beach, FL 33408-3909. The process server found an elderly family by the last name of Liss living at this address, who claimed to have lived there for the past six years. (Miller Decl. Exhibit G) Further intensive attempts to locate Mr. Durland through the media and investigators have proven futile.

## ARGUMENT

As shown above, Lead Plaintiff has no viable options left to obtain service on defendants Knabb and Durland, the central wrongdoers in this alleged securities fraud. Numerous avenues have been used to obtain information on the current whereabouts of the unserved defendants, yet every method used has failed. Thus, Lead Plaintiff respectfully requests that this Court authorize the use of alternative means to effect service of process upon Defendants Knabb and Durland including, service according to Rule 4(f)(3), service by publication and/or by delivering the summons and a copy of the complaint to Pegasus' bankruptcy counsel. In support of the requested relief, Lead Plaintiff argues the following:

*First*, under Rule 4(f)(3), the Court may permit alternate means of service of process as long it is (1) directed by the court and (2) not prohibited by international agreements. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) (permitting service by regular mail and e-mail under Rule 4(f)(3)). Court have previously depended on Rule 4(f)(3) to authorize a wide variety of methods of service including service by publication, regular mail, mail to defendant's last known address, delivery to defendant's attorney, and even email. *Rio*, 284 F.3d at 1016; *see SEC v. Tome*, 833 F.2d 1086, 1094 (2d Cir. 1987) (allowing service by publication); see also *Smith v. Islamic Emirate*, Nos. 01 Civ. 10132, 01 Civ. 10144, 2001 U.S. Dist. LEXIS 21712, at *10 (S.D.N.Y. Dec. 26, 2001) (authorizing service of process by publication). Therefore, the methods of service requested by this Motion have been permitted in the past and are not in violation of the Hague Convention.

*Second*, this Court has discretion to determine when alternative service of process under Rule 4(f)(3) is applicable. *Rio*, 284 F.3d at 1016. Service of process under Rule 4(f)(3) is neither a "last resort," nor "extraordinary relief" and it is not any less favored than service under

the other subsections. *Forum Fin. Group, LLC v. Harvard College*, 199 F.R.D. 22, 23 (D. Me. 2001). The court is authorized to approve any method of service that is "reasonably calculated" to give notice to the defendant. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Lead Plaintiff has made repeated attempts to effect service upon Defendants Knabb and Durland. Yet, despite its best efforts, Lead Plaintiff has been unable to serve them. Lead Plaintiff has exhausted all reasonable avenues to effect service and therefore seeks the Court's help in allowing Lead Plaintiff to serve Defendants Knabb and Durland by alternative means. This is the only way to ensure service on them.

*Third*, this Court may permit service by certified mail to the defendants' attorney representing them in a different matter. *See Forum Fin. Group, LLC*, 199 F.R.D. at 23-25. Courts have accepted service on defendant's counsel when the defendant was either evading service or service could not be effected by any standard means. *See FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 535 (E.D. Va. 2005). Courts have previously found that an attorney representing the defendant in a different matter must have some means of communicating with his client and therefore is a proper party to receive service on his client's behalf. *BP Prods. N. Am. v. Dagra*, 232 F.R.D. 263, 265 (E.D. Va. 2005). (permitting alternative means of service by serving a copy of the summons and complaint upon the attorney representing the defendant in a different matter); *Ehrenfeld v. Mahfouz*, No. 04 Civ. 9641, 2005 U.S. Dist. LEXIS 4741, at *6-7 (S.D.N.Y. Mar. 23, 2005) (allowing service on defendant's attorneys because they must be in communication with the defendant pending legal proceedings in a different case); *United States v. Padilla*, No. CIV. S-01-2301, 2002 U.S. Dist. LEXIS 7477, at *5 (E.D. Cal. Feb 22, 2002) (authorizing personal service of a copy of a summons and complaint on the defendant's attorney in another matter). Here, while the attorney in question is bankruptcy counsel for Pegasus,

debtor-in-possession, not counsel for Knabb and Durland directly, both men are the key contacts for the attorney at Pegasus and he has had recent dealings with both—including regarding the service issue in the case at bar—as described below.

According to the filed Declaration of David A.P. Brower in Support of Lead Plaintiff's Motion for an Order Permitting Alternative Means For Service of Process, dated May 1, 2008, Kevin C. Gleason is the bankruptcy counsel for debtor-in-possession, Pegasus. In a conversation that took place on February 6, 2008, Mr. Gleason admitted to Mr. Brower that he has met with Defendants Knabb and Durland regarding the bankruptcy proceedings regarding Pegasus and has taken their instructions. He also admitted that he had their telephone numbers. Mr. Gleason stated that he would be meeting with both Knabb and Durland again and would ask them where they would like to be served. Mr. Gleason was never heard from again despite multiple attempts by Lead Counsel for the Class. The Brower Declaration is clear evidence that Mr. Gleason knows the whereabouts of Defendants Knabb and Durland and that Knabb and Durland have notice of the action, to the extent that there was any doubt. Therefore, the Lead Plaintiff asks the Court to authorize service by the sending of the summons and complaint by certified mail to Mr. Gleason.

*Fourth*, Defendants Knabb and Durland are very well aware of this action against them and it is clear they continue to evade service. Therefore, if the Court does not permit Lead Plaintiff to serve them through Mr. Gleason, it should permit Lead Plaintiff to effect service on the them by publication. See, *Javier H. v. Garcia-Botello*, 217 F.R.D. 308, 309 (W.D.N.Y. 2003), citing *Securities & Exchange Commission v. HGI, Inc.*, 1999 U.S. Dist. LEXIS 17441, (S.D.N.Y. 1999) ("Service by publication may be permissible when service is otherwise impossible and when it is reasonable to conclude that the defendant is likely to read the

11

newspaper in which the notice is published, particularly when the defendant is otherwise on notice that there may be a case pending against him."); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("in the case of persons missing, employment of an indirect and even a probably futile means of notification is all the situation permits and creates no constitutional bar to a final decree foreclosing their rights."); *Securities & Exchange Commission v. Tome*, 833 F.2d 1086, 1092 (2d Cir. 1987) ("Where the plaintiff can show that deliberate avoidance and obstruction by the defendants have made the giving of notice impossible, statutes and caselaw have allowed substitute notice by mail and publication in media of general and wide circulation.").

## **CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully asks the Court to enter an Order permitting the following:

1. The use of alternative means necessary to effect service of process upon the Defendants Knabb and Durland including: (1) Publication in accordance with Florida Practice & Procedure § 49.011(11), allowing for service of process by publication in cases "in which personal service of process or notice is not required by the statutes or constitution of this state or by the Constitution of the United States;" and (2) service through the delivery of a summons and a copy of the complaint to Pegasus Wireless Corporation's bankruptcy counsel, Kevin C. Gleason..

2. Granting any other relief the Court deems proper to effect service of process upon Defendants Knabb and Durland, including but not limited to service of process according to Fed. Rules Civ. P. Rule 4(f)(3) allowing service of process on an individual located outside of the United States.

DATED: May 2, 2008                                        Respectfully submitted,

                                               By:     s/Julie Prag Vianale
Julie Prag Vianale (FBN 0184977)
VIANALE & VIANALE LLP
2499 Glades Road – Suite 112
Boca Raton FL  33431
Tel: (561) 392-4750
Fax: (561) 392-4775
jvianale@vianalelaw.com

*Liaison Counsel for Lead Plaintiff and the Class*

-and-

Kim E. Miller (*pro hac vice*)
KAHN GAUTHIER SWICK, LLC.
12 E. 41st Street, 12th Floor
New York, NY 10007
Tel: (212) 696-3730
Fax: (504) 455-1498
Kim.Miller@kgscounsel.com

Lewis S. Kahn (*pro hac vice*)
KAHN GAUTHIER SWICK, LLC
650 Poydras Street, Ste. 2150
New Orleans, LA  70130
Tel:  (504) 455-1400
Fax:  (504) 455-1498
Lewis.kahn@kgscounsel.com

*Lead Counsel for Lead Plaintiff and the Class*

David A.P. Brower (*pro hac vice*)
BROWER PIVEN
A Professional Corporation
488 Madison Avenue
Eighth Floor
New York, NY 10022
Tel: (212) 501-9000

Fax: (212) 501-0300
brower@browerpiven.com


Mark P. Kindall (*pro hac vice*)
SCHATZ NOBEL IZARD, P.C.
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06103
Tel: (860) 493-6292
Fax: (860) 493-6290
mkindall@snilaw.com


*Additional Counsel for the Class*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the foregoing was served by ECF and U.S. Mail, on May 2, 2008, on all counsel or parties of record on the attached service list.

                              s/ Julie Prag Vianale
                              Julie Prag Vianale
                              Fla. Bar ID No. 0184977
                              Jvianale@vianalelaw.com
                              2499 Glades Road, Suite 112
                              Boca Raton, Florida 33431
                              Telephone:    (561) 392-4750
                              Facsimile:    (561) 392-4775

Case No.: 07-81113-CIV-Marra

**SERVICE LIST**

**Via CM-ECF**:

**Jeffrey Robert Geldens**JGeldens@BroadandCassel.com
**Lewis Kahn**lewis.kahn@kgscounsel.com
**Mark P. Kindall**mkindall@snilaw.com
**Nancy A. Kulesa**nkulesa@snilaw.com
**Norman Malinski**nmpa@att.net
**Kim E. Miller**kim.miller@kgscounsel.com
**Daniel Stuart Newman**Dnewman@broadandcassel.com bfradera@broadandcassel.com
**Jeffrey S. Nobel**jnobel@snilaw.com
**Robert C. Schubert**

**Via U.S. Mail**:

**Michael David Braun**
Braun Law Group, P.C.
12304 Santa Monica Boulevard, Suite 109
Los Angeles, CA 90025

**David A.P. Brower**
Brower Piven
488 Madison Avenue, Eighth Floor
New York, New York 10022

**Aaron H. Darsky**
Schubert & Reed LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111

**Michael Robert Reese**
Gutride Safier LLP
230 Park Avenue
Suite 963
New York, NY 10169

**Seth Adam Safier**
Gutride Safier LLP
835 Douglass Street
San Francisco, CA 94111

**Kevin Gleason, Esq.**
4121 North 31st Avenue
Hollywood, Florida 33021-2011

16