UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-81113-CIV-MARRA/JOHNSON

IN RE PEGASUS WIRELESS
CORPORATION SECURITIES
LITIGATION
_____/

## ORDER AND OPINION GRANTING NICHOLAS PERATICOS'S MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Nicholas Peraticos's Motion to

Dismiss the Consolidated Amended Class Action Complaint [DE 141] and Lead

Plaintiff's Request for Judicial Notice in Support of Opposition to Defendant

Peratico's Motion to Dismiss the Consolidated Amended Class Action Complaint for

Violation of Federal Securities Laws [DE 152].  The motions are fully briefed and ripe

for review.  The Court has carefully considered the entire Court file, oral argument of

counsel, and is otherwise fully advised in the premises.

## Introduction

Lead Plaintiffs, Michael Dattilo, Peter Gianoukas, Marat Khusainov, Michael

Mitchell, and Nick Pournaras (collectively, "Plaintiffs") have brought this securities

fraud class action alleging defendants caused them and the putative class economic

harm when they purchased common stock of Pegasus at artifically-inflated prices.

Compl. ¶¶ 1, 6.  Plaintiffs filed a Consolidated Amended Class Action Complaint for

Violations of Federal Securities Laws [DE 128] ("Complaint" or "Compl.") on July 11,

2008.  Plaintiffs propose to bring a class action on behalf of those who purchased or

otherwise acquired the common stock of Pegasus Wireless Corporation ("Pegasus" or "Company") between December 22, 2005, and September 5, 2006, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").  Compl. ¶ 1.  Plaintiffs allege that defendants published a series of materially false and misleading statements which defendants knew, and/or were severely reckless in not knowing, were materially false and misleading at the time of publication, and which omitted to reveal material information necessary to make defendants' statements, in light of such material omissions, not materially false and misleading.  *Id*.

Defendant Jasper Knabb ("Knabb") was Chief Executive Officer, President, and a member of the Board of Directors of the Company.  Compl. ¶ 8.  "Knabb has a material history of legal and financial problems.  Multiple lawsuits have been instituted against him . . . including suits alleging fraud, misrepresentation, breach of contract, and failure to pay on personal guarantees."  *Id*.  Defendant Stephen Durland ("Durland") was Chief Financial Officer and a member of the Board of Directors of the Company.  Compl. ¶ 9.  Prior to his "retirement," defendant Alex Tsao ("Tsao") was Chief Executive Officer and the Chairman of the Board of Directors of the Company.  Compl. ¶ 10.

Defendant Nicholas Peraticos ("Peraticos") was an outside member of the Board of Directors of the Company for a part of the purported class period.  Compl. ¶ 13.  Peraticos moves to dismiss the Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rule of Civil Procedure and the Private Securities Litigation Reform Act.

Peraticos's motion will be granted.

## Background

In 2004, a reverse merger between OTC Wireless and a shell company called Homeskills, Inc. resulted in the creation of Pegasus Wireless Corporation.  Comp. ¶ 19.  During the putative class period, Pegasus was a Nevada corporation headquartered in Fremont, California.  Compl. ¶ 7.  The Company allegedly designed, manufactured, and marketed wireless networking software and hardware.  *Id.*

Plaintiff Michael Mitchell originally filed suit in the United States District Court for the Northern District of California on November 7, 2006.  On September 24, 2007, Judge Marilyn Patel ordered that the case be transferred to this Court.  On July 11, 2008, Plaintiffs filed their consolidated amended complaint, asserting causes of action under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  Compl. ¶¶ 156-176.  The Complaint also asserts a claim under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  Compl. ¶¶ 177-180.  Plaintiffs allege that Defendants made material misstatements in press releases and documents filed with the United States Securities and Exchange Commission (the "SEC").  As to Peraticos, Plaintiffs maintain that they have stated a 10(b) securities fraud claim, as well as a "control person" claim under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).[1]  The Court does not agree.

---

[1]  Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), provides in pertinent part:

## Pleading Requirements

Section 10(b) of the Securities and Exchange Act of 1934 ("§ 10(b)") makes it "unlawful for any person . . . to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commissioner may prescribe." 15 U.S.C. § 78j (2000). Pursuant to this authority, Rule 10b-5 makes it unlawful for any person to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstance under which they were made, not misleading, or to engage in any act, practice, or course of business which operates or would operate as a fraud or

_____

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

The Eleventh Circuit has held that in order to state a claim for control person liability under § 20(a), a plaintiff must allege facts that establish (1) a primary violation of the securities laws by a controlled person; (2) that the defendant had the power to control the general business affairs of the controlled person; and (3) that the defendant had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability. *Theoharous v. Fong*, 256 F.3d 1219, 1227 (11th Cir. 2001); *Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 (11th Cir. 1996).

deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. The Eleventh Circuit requires a plaintiff alleging securities fraud under Rule 10b-5 to plead (1) a false statement or omission of material fact; (2) made with scienter; (3) upon which the plaintiff justifiably relied; (4) that proximately caused the plaintiff's injury." *Robbins v. Koger Properties, Inc.,* 116 F.3d 1441, 1446 (11th Cir. 1997); *see also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006).

Allegations of security fraud under § 10(b) and Rule 10b-5 are subject to the heightened pleading standards of Federal Rule of Civil Procedure Rule 9(b) ("Rule 9(b)"). Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The purpose of Rule 9(b) is to "ensure that the allegations of fraud are specific enough to provide sufficient notice of the acts complained of" and to "eliminate those complaints filed as a pretext for discovery of unknown wrongs. . . ." *Anderson v. Transglobe Energy Corp.*, 35 F. Supp. 2d 1363, 1369 (M.D. Fla. 1999). The Eleventh Circuit has cautioned, however, that "Rule 9(b) must not be read to abrogate Rule 8 . . . and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directive of Rule 9(b) with the broader policy of notice pleading." *Friedlander v. Nims,* 755 F.2d 810, 813 n.3 (11th Cir. 1985).

Generally, in order to survive a Rule 9(b) challenge, the complaint must specify: (1) what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement and the person responsible for making it (or, in the case of omissions, not making) same; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citing *Brooks v. Blue Cross and Blue Shield of Florida,* 116 F.3d 1364, 1371 (11th Cir. 1997)).

In December 1995, Congress enacted the Private Securities Litigation Reform Act, codified at 15 U.S.C. § 78u-4(b) ("PSLRA"), which further heightens the pleading requirements for Rule 10b-5 claims. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). Under the PSLRA, a plaintiff must, "with respect to each act or omission alleged to violate [the Exchange Act], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). This requirement applies to the scienter element of a Section 10(b) claim and requires that the defendant's intent "to deceive, manipulate, or defraud" be stated with particularity. *Bryant v. Avado Brands, Inc.* 187 F.3d 1271, 1281-82 (11th Cir. 1999).

**Group Pleading Doctrine**

Under the group pleading doctrine, the identification of the individual sources

of statements is unnecessary when the fraud allegations arise from misstatements or

omissions in group-published documents, such as annual reports, prospectuses,

registration statements, press releases, or other group published information that

presumably constitute the collective actions of those individuals involved in the

day-to-day affairs of the corporation.  *In re Sunbeam Securities Litigation*, 89 F.

Supp. 2d 1326, 1340 -1341 (S.D. Fla. 1999).  Many courts have determined that this

doctrine is inconsistent with the express provisions of the PSLRA.

The Eleventh Circuit has noted the debate among other courts as to the

viability of the group pleading doctrine in the wake of the PSLRA, but it has explicitly

declined to rule on the issue.  *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1018-

19 (11th Cir. 2004).  Because the Eleventh Circuit has not ruled on this issue, and

because other courts from the Southern District Court of Florida have permitted it,

parts of the Complaint that rely on this doctrine will not be dismissed on this ground

as long as, in addition to alleging that the published information made a material

misstatement attributable to the Company at the time of public dissemination,

Plaintiffs make the specific factual allegation that Peraticos, due to his high ranking

position and direct involvement in the everyday business of the Company, was

directly involved in controlling the content of the statements at issue.  *Bruhl v.*

*Conroy*, No. 03-23044, 2007 WL 983228, *3 (S.D. Fla. Mar. 27, 2007);  *Holmes v. Baker*,

166 F. Supp. 2d 1362, 1373 (S.D. Fla. 2001); *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d

at 1340 -1341.  While the group pleading doctrine may assist Plaintiffs in satisfying

the Reform Act's and Rule 9(b)'s particularity requirements, it does not apply to the

Reform Act's scienter requirement.  *Holmes v. Baker*, 166 F. Supp. 2d at 1376.

**Relevant Allegations in the Complaint**

Generally, the allegations of the Complaint treat all the defendants

collectively.  Of the 180 paragraphs contained in the Complaint, only two refer

specifically to Peraticos.  For purposes of analyzing whether Plaintiffs have

adequately alleged scienter on Peraticos's behalf, the only relevant allegations would

be those that point to actions or inactions by Peraticos himself.

Paragraphs 13 and 89 of the Complaint are based on information obtained from

a New York Post article about the Company titled, "Horse Feathers" and the fact that

none of the information contained in the article is revealed in the 2005 Form 10K that

Peraticos signed and certified.   According to the Complaint, the article describes

Peraticos as a London-based Greek shipowner who recently joined Pegasus to serve as

chairman of the board.  The article further states that

> [t]he Company's SEC filings describe Peraticos as head of a London
> shipping firm called Pegasus Ocean Services, Ltd.  Yet that is hardly the
> whole story.  U.K. corporate records show the Pegasus [Ocean Services,
> Ltd.] operation to be bankrupt and in liquidation, while sources in the
> closely knit Greek shipping community say Pegasus [Ocean Services,
> Ltd.] has been out of business for years.  British shipping industry trade
> publications place the blame for Pegasus [Ocean Services, Ltd.]'s demise
> squarely on Peraticos himself.  Hoping to expand the family business, he
> had issued $150 million in late 1990's junk bonds to a consortium of

> lenders that included Lazard Freres and Merrill Lynch, then ruinously
> pored the money into a fleet of aging rust-bucket oil tankers, leading to
> the collapse of the business.

Compl. ¶ 89.  These allegations do not, among other things, allege a misstatement or

omission of material fact by Peraticos.

## Discussion

In response to the motion to dismiss, Plaintiffs argue Peraticos is liable for the

following allegedly materially misleading omissions in the 2005 Form 10-K:

- Knabb's prior arrest, his civil litigation history, his past involvement with other companies, and his prior "associations" with "fraudsters" and "the like."  DE 155 at 5-6;

- Durland's "history and involvement with failed and suspect [business] ventures," his auditing of some companies that were represented by an individual who had been disbarred, and his loss of his CPA license in North Carolina.  DE 155 at 8;

- Tsao's earlier role as founder of OTC Wireless, a company in which Knabb also served as an officer.  *Id.*; and

- Peraticos's funding for, and purported mismanagement of, his foreign business.  DE 155 at 12, 17.

These allegations are wholly insufficient on their face.  None of facts pled in

paragraphs 13 and 89 allege any of the necessary elements for a Section 10(b) claim,

*i.e.*, (1) a false statement or omission of material fact; (2) made with scienter; (3)

upon which the plaintiff justifiably relied; (4) that proximately caused the plaintiff's

injury. *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1446 (11th Cir. 1997); *see

also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006).  Also

noticeably absent are any allegations regarding how Peraticos supposedly knew of

Knabb's, Duraland's and Tsao's prior bad acts, what duty he had to disclose

information regarding his purported failed business, how Plaintiffs were mislead by

these alleged material omissions, and importantly, what Peraticos obtained by

making these "omissions."

Plaintiffs assert that "[t]he Complaint amply demonstrates, however, that

every statement has an allegation detailing the omissions of material facts that

render the statement materially false or misleading when made.  For example, the

Complaint contains [a] myriad [of] allegations regarding *Defendants'* failure to

disclose any information about Knabb's past."  DE 155 at 1-2 (emphasis supplied).

Plaintiffs then proceed to cite to paragraph after paragraph where it is alleged that

*Defendants* misled investors.  Allegations that refer collectively to *Defendants* is

inadequate to satisfy the heightened pleading standards set forth by Rule 9(b) and

the PSLRA.

As to the public statements Defendants allegedly made, there are insufficient

allegations which would permit the Court to apply the group pleading doctrine.  The

group pleading doctrine has been used in rare occasions to render the identification

of the individual sources of statements unnecessary when the fraud allegations arise

from misstatements or omissions in group-published documents.  *Bruhl v. Conroy*, No.

03-23044, 2007 WL 983228, *3 (S.D. Fla. Mar. 27, 2007).  Plaintiffs have neither

alleged that this outside director either participated in the day-to-day operations of

Pegasus, or prepared or communicated the Company's group published information at a particular time.  *Id.*; *In re Sensormatic Electronics Corp. Securities Litigation*, No. 01-8346, 2002 WL 1352427, *5 (S.D. Fla. June 10, 2002); *Holmes v. Baker*, 166 F. Supp. 2d 1362, 1373 (S.D. Fla. 2001); *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d at 1340 -1341.

### Scienter

The Eleventh Circuit has explained that the requisite "strong inference" of scienter can be pled only by alleging "severe recklessness."  *Ziemba*, 256 F.3d at 1202.  Severe recklessness requires more than "inexcusable negligence."  *Id.; see also Ernst & Ernst v. Hochfelderl*, 425 U.S. 185, 193 n.12 (1976).  The Eleventh Circuit has defined "severe recklessness" as those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standard of ordinary care, and that present a danger of misleading buyers and sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.  *McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir. 1989).

Whether a strong inference of scienter arises from the pleaded facts is a specific inquiry to be determined on a case-by-case basis after a review of the totality of the factual allegations in the complaint.  *See, e.g., In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d at 1339 ("[i]n the context of the entirety of the facts alleged in the complaint," an inference of scienter could be drawn); *In re Eagle Bldg. Tech Inc.,*

*Sec. Litigation*, 319 F. Supp. 2d 1318, 1327 (S.D. Fla. 2004) ("the issue of scienter

itself is very fact specific, requiring consideration of each individual factor as well as

the context as a whole").  Thus, factors such as a reckless or improper audit, the

magnitude of the fraud, and "red flags,"[2] should be examined individually, with the

context as a whole also playing a role in the Court's consideration.  *Id.*; *In re*

*MicroStrategy, Inc., Sec. Litig.*, 115 F. Supp. 2d 620, 649 (E.D. Va. 2000).  Scienter

may even be demonstrated by strong circumstantial evidence or allegations.  *See,*

*e.g., In re PSS World Med., Inc. Sec. Litig*, 250 F. Supp. 2d 1335, 1344 (M.D. Fla. 2002)

("Plaintiffs can meet their burden under the PSLRA if they plead facts constituting

'strong circumstantial evidence of conscious misconduct or severe recklessness'"); *In*

*re Sunbeam Sec. Litig.*, 89 F. Supp. 2d at 1338 (circumstantial evidence strongly

suggested that defendants acted with scienter).

Plaintiffs assert that "[t]he Complaint is rife with specific and detailed factual

allegations which, taken together, support a strong inference that Peraticos knew

***exactly*** what was going on at the Company; and if he did not, the numerous red flags

that should have repeatedly alerted him to his ignorance constituted severe

reckless[ness]."  DE 155 at 11 (emphasis in original).

---

[2] "Red flags" are "those facts which come to the attention of a [defendant] which would place a reasonable [defendant] on notice that the . . . company was engaged in wrongdoing to the detriment of its investors."  *In re Eagle Bldg. Tech Inc., Sec. Litigation*, 319 F. Supp. 2d 1318, 1328 (S.D. Fla. 2004)(citation omitted).

Contrary to Plaintiffs' contentions, the allegations as to Peraticos are not sufficient to satisfy the PSLRA's requirement of particularized facts for several reasons.  "To establish scienter in a securities fraud case alleging non-disclosure of potentially material facts, the plaintiff must demonstrate: (1) the defendant knew of the potentially material fact, and (2) the defendant knew that failure to reveal the potentially material fact would likely mislead investors.  The requirement of knowledge in this context may be satisfied under a recklessness standard by the defendant's knowledge of a fact that was so obviously material that the defendant must have been aware both of its materiality and that its non-disclosure would likely mislead investors."  *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1261 (10th Cir. 2001); *McDonald*, 863 F.2d at 814.

Plaintiffs do not allege specifically what material information Peraticos knew, or was so obvious that he must have been aware of it, how Peraticos knew the information, and what duty he had to disclose it.  Plaintiffs state in their response and at oral argument that they make specific allegations which are simply not in the Complaint.  The law requires that *specific* facts be alleged to support Plaintiffs' allegation that Peraticos concealed or misstated material information.  *Garfield*, 466 F.3d at 1265; *Scaturro v. Seminole Cas. Ins. Co.*, 542 F. Supp. 2d 1290, 1299 (S.D. Fla. 2008).  As stated above, Plaintiffs' conclusory and unsupported allegations that *Defendants* ignored, or were severely reckless in disregarding, material facts about the past histories and associations of the principals of a Company, are insufficient as

a matter of law.  Also as noted above, the Reform Act requires that a complaint state with particularity facts giving rise to a strong inference that each separate defendant acted with scienter with respect to each act or omission alleged.  *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d at 1341.  This is not done in the Complaint.

After a careful review of the totality of the factual allegations in the Complaint, the Court finds that Plaintiffs fail to specify conduct upon which Peraticos could be liable and that an inference of scienter cannot be drawn from the omissions or misrepresentations that are alleged on the part of Defendants.  Since no primary violation has adequately been alleged, it follows that no control person claim has been stated.[3]  Accordingly, it is hereby

ORDERED AND ADJUDGED as follows:

1.     Defendant Peraticos Auditing Services, Inc.'s Motion to Dismiss the Amended Class Action Complaint [DE 140] is GRANTED without prejudice.

2.     Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely granted when justice so requires."  Therefore, in accordance with the usual practice upon granting a motion to dismiss, leave to file a Second Amended Complaint within 20 days of the date of this Order will be permitted.

---

[3]  *See* footnote 1 *supra*.

3.      Lead Plaintiff's Request for Judicial Notice in Support of Opposition to

Defendant Peratico's Motion to Dismiss the Consolidated Amended Class

Action Complaint for Violation of Federal Securities Laws [DE 152] is

GRANTED.  *Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53,

(11th Cir. 2006).

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 21st day of September, 2009.

KENNETH A. MARRA
United States District Judge

copies to:

All counsel of record