UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-81113-CIV-MARRA/JOHNSON

IN RE PEGASUS WIRELESS
CORPORATION SECURITIES
LITIGATION
_____/

**ORDER AND OPINION GRANTING CHICH-HSING TSAO'S MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon the Motion of Defendant Chich-Hsing ("Alex") Tsao to Dismiss the Consolidated Amended Class Action Complaint [DE 139]; Defendant Chich-Hsing ("Alex") Tsao's Request for Judicial Notice in Support of Motion to Dismiss the Consolidated Amended Class Action Complaint [DE 142]; Lead Plaintiff's Request for Judicial Notice in Support of Opposition to Defendant Tsao's Motion to Dismiss the Consolidated Amended Class Action Complaint for Violation of Federal Securities Laws [DE 157]; and Lead Plaintiff's Request for Judicial Notice in Support of Opposition to Defendant Tsao's Motion to Dismiss the Consolidated Amended Class Action Complaint for Violation of Federal Securities Laws [DE 152]. The motions are fully briefed and ripe for review. The Court has carefully considered the entire Court file and oral argument of counsel.

**Introduction**

Lead Plaintiffs, Michael Dattilo, Peter Gianoukas, Marat Khusainov, Michael Mitchell, and Nick Pournaras (collectively, "Plaintiffs") have brought this securities fraud class action alleging defendants caused them and the putative class economic

harm when they purchased common stock of Pegasus at artificially-inflated prices. Compl. ¶¶ 1, 6. Plaintiffs filed a Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws [DE 128] ("Complaint" or "Compl.") on July 11, 2008. Plaintiffs propose to bring a class action on behalf of those who purchased or otherwise acquired the common stock of Pegasus Wireless Corporation ("Pegasus" or "Company") between December 22, 2005, and September 5, 2006, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). Compl. ¶ 1. Plaintiffs allege that defendants published a series of materially false and misleading statements which defendants knew, and/or were severely reckless in not knowing, were materially false and misleading at the time of publication, and which omitted to reveal material information necessary to make defendants' statements, in light of such material omissions, not materially false and misleading. *Id*.

Defendant Chich-Hsing ("Alex") Tsao ("Tsao") was Chief Executive Officer and the Chairman of the Board of Directors of the Company. Compl. ¶ 10. Tsao moves to dismiss the Complaint on the grounds that it fails to state a claim under Section 10(b) of the Exchange Act and Rule 10b-5, and its fails to comply with the pleading requirements mandated by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act. Tsao's motion will be granted.

Background

In 1993, Tsao founded OTC Telecom, later renamed OTC Wireless. Compl. ¶10. In 2004, a reverse merger between OTC Wireless and a shell company called

Homeskills, Inc. resulted in the creation of Pegasus Wireless Corporation.  Comp. ¶ 19.  Tsao was Pegasus's Chief Executive Officer and Chairman of its Board until June 19, 2006.  Compl. ¶¶ 10, 83(c).  During the putative class period, Pegasus was a Nevada corporation headquartered in Fremont, California.  Compl. ¶ 7.  The Company allegedly designed, manufactured, and marketed wireless networking software and hardware.  *Id*.

Plaintiff Michael Mitchell originally filed suit in the United States District Court for the Northern District of California on November 7, 2006.  On September 24, 2007, Judge Marilyn Patel ordered that the case be transferred to this Court.  On July 11, 2008, Plaintiffs filed their consolidated amended complaint, asserting causes of action under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  Compl. ¶¶ 156-176.  The Complaint also asserts a claim under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  Compl. ¶¶ 177-180.  Plaintiffs allege that Defendants made material misstatements in press releases and documents filed with the United States Securities and Exchange Commission (the "SEC").  The gravamen of the Complaint as to Tsao is that he knew about, but did not disclose, the background of defendant Jasper Knabb ("Knabb"), who was President and a director of Pegasus and succeeded Tsao as the Company's Chief Executive Officer and Chairman.  Compl. ¶ 8.

**Pleading Requirements**

Section 10(b) of the Securities and Exchange Act of 1934 ("§ 10(b)") makes it "unlawful for any person . . . to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commissioner may prescribe." 15 U.S.C. § 78j (2000). Pursuant to this authority, Rule 10b-5 makes it unlawful for any person to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstance under which they were made, not misleading, or to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. The Eleventh Circuit requires a plaintiff alleging securities fraud under Rule 10b-5 to plead (1) a false statement or omission of material fact; (2) made with scienter; (3) upon which the plaintiff justifiably relied; (4) that proximately caused the plaintiff's injury." *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1446 (11th Cir. 1997); *see also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006).

Allegations of security fraud under § 10(b) and Rule 10b-5 are subject to the heightened pleading standards of Federal Rule of Civil Procedure Rule 9(b) ("Rule 9(b)"). Rule 9(b) requires that "in all averments of fraud or mistake, the

circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).  The purpose of Rule 9(b) is to "ensure that the allegations of fraud are specific enough to provide sufficient notice of the acts complained of" and to "eliminate those complaints filed as a pretext for discovery of unknown wrongs. . . ." *Anderson v. Transglobe Energy Corp.*, 35 F. Supp. 2d 1363, 1369 (M.D. Fla. 1999). The Eleventh Circuit has cautioned, however, that "Rule 9(b) must not be read to abrogate Rule 8 . . . and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directive of Rule 9(b) with the broader policy of notice pleading." *Friedlander v. Nims,* 755 F.2d 810, 813 n.3 (11th Cir. 1985).

Generally, in order to survive a Rule 9(b) challenge, the complaint must specify: (1) what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement and the person responsible for making it (or, in the case of omissions, not making) same; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud.  *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citing *Brooks v. Blue Cross and Blue Shield of Florida,* 116 F.3d 1364, 1371 (11th Cir. 1997)).

In December 1995, Congress enacted the Private Securities Litigation Reform Act, codified at 15 U.S.C. § 78u-4(b) ("PSLRA"), which further heightens the pleading requirements for Rule 10b-5 claims.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551

U.S. 308 (2007).  Under the PSLRA, a plaintiff must, "with respect to each act or omission alleged to violate [the Exchange Act], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  This requirement applies to the scienter element of a Section 10(b) claim and requires that the defendant's intent "to deceive, manipulate, or defraud" be stated with particularity.  *Bryant v. Avado Brands, Inc.* 187 F.3d 1271, 1281-82 (11th Cir. 1999).

**Group Pleading Doctrine**

Under the group pleading doctrine, the identification of the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group-published documents, such as annual reports, prospectuses, registration statements, press releases, or other group published information that presumably constitute the collective actions of those individuals involved in the day-to-day affairs of the corporation.  *In re Sunbeam Securities Litigation*, 89 F. Supp. 2d 1326, 1340 -1341 (S.D. Fla. 1999).  Many courts have determined that this doctrine is inconsistent with the express provisions of the PSLRA.

The Eleventh Circuit has noted the debate among other courts as to the viability of the group pleading doctrine in the wake of the PSLRA, but it has explicitly declined to rule on the issue.  *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1018-19 (11th Cir. 2004).  Because the Eleventh Circuit has not ruled on this issue, and because other courts from the Southern District Court of Florida have permitted it,

parts of the Complaint that rely on this doctrine will not be dismissed on this ground as long as, in addition to alleging that the published information made a material misstatement attributable to the Company at the time of public dissemination, Plaintiffs make the specific factual allegation that Tsao, due to his high ranking position and direct involvement in the everyday business of the Company, was directly involved in controlling the content of the statements at issue.  *Bruhl v. Conroy*, No. 03-23044, 2007 WL 983228, *3 (S.D. Fla. Mar. 27, 2007);  *Holmes v. Baker*, 166 F. Supp. 2d 1362, 1373 (S.D. Fla. 2001); *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d at 1340 -1341.  While the group pleading doctrine may assist Plaintiffs in satisfying the Reform Act's and Rule 9(b)'s particularity requirements, it does not apply to the Reform Act's scienter requirement.  *Holmes v. Baker*, 166 F. Supp. 2d at 1376.

**Does the Complaint Allege Scienter With Particularity?**

The Eleventh Circuit has explained that the requisite "strong inference" of scienter can be pled only by alleging "severe recklessness." *Ziemba*, 256 F.3d at 1202.  Severe recklessness requires more than "inexcusable negligence." *Id.*; *see also Ernst & Ernst v. HochfelderI*, 425 U.S. 185, 193 n.12 (1976).  The Eleventh Circuit has defined "severe recklessness" as those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standard of ordinary care, and that present a danger of misleading buyers and sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.  *McDonald v. Alan Bush*

*Brokerage Co.*, 863 F.2d 809, 814 (11th Cir. 1989).

Whether a strong inference of scienter arises from the pleaded facts is a specific inquiry to be determined on a case-by-case basis after a review of the totality of the factual allegations in the complaint.  *See, e.g., In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d at 1339 ("In the context of the entirety of the facts alleged in the complaint," an inference of scienter could be drawn); *In re Eagle Bldg. Tech Inc., Sec. Litigation*, 319 F. Supp. 2d 1318, 1327 (S.D. Fla. 2004) ("[T]he issue of scienter itself is very fact specific, requiring consideration of each individual factor as well as the context as a whole").  Thus, factors such as a reckless or improper audit, the magnitude of the fraud, and "red flags,"[1] should be examined individually, with the context as a whole also playing a role in this Court's consideration.  *Id.*; *In re MicroStrategy, Inc., Sec. Litig.*, 115 F. Supp. 2d 620, 649 (E.D. Va. 2000).  Scienter may even be demonstrated by strong circumstantial evidence or allegations.  *See, e.g., In re PSS World Med., Inc. Sec. Litig*, 250 F. Supp. 2d 1335, 1344 (M.D. Fla. 2002) ("Plaintiffs can meet their burden under the PSLRA if they plead facts constituting 'strong circumstantial evidence of conscious misconduct or severe recklessness'"); *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d at 1338 (circumstantial evidence strongly suggested that defendants acted with scienter).

---

[1] "Red flags" are "those facts which come to the attention of a [defendant] which would place a reasonable [defendant] on notice that the . . . company was engaged in wrongdoing to the detriment of its investors." *In re Eagle Bldg. Tech Inc., Sec. Litigation*, 319 F. Supp. 2d 1318, 1328 (S.D. Fla. 2004)(citation omitted).

Plaintiffs assert that "[t]he Complaint is rife with detailed factual allegations which, taken together, support a strong inference that Tsao knew *exactly* what was going on at the Company; and if he did not, the numerous red flags that should have repeatedly alerted him to his ignorance constituted severe reckless[ness]." DE 156 at 12 (emphasis in original).

**Relevant Allegations in the Complaint**

Generally, the allegations of the Complaint treat all the defendants collectively. Very few paragraphs refer specifically to Tsao. For purposes of analyzing whether Plaintiffs have adequately alleged scienter on Tsao's behalf, the only relevant allegations would be those that point to actions or inactions by Tsao specifically.

Paragraph 49 alleges in pertinent part that Tsao certified, based on his knowledge, that the Company's 2005 Form 10-KSB did not omit to state any material facts necessary to make the statements made not misleading. Tsao certified that he designed (or supervised the design of) disclosure controls and procedures to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with generally accepted accounting principles. He further certified that he disclosed any fraud, whether or not material, that involves management or other employees who have a significant role in the small business issuer's internal control over financial reporting. Compl. ¶ 49.

Paragraph 50 alleges that Tsao signed a stock certification made pursuant to 18 U.S.C. § 1350, as adopted pursuant to Section 906 of the Sabanes-Oxley Act of 2002 ("SOX Certifications"), for the 10K that all the information contained in the report fairly presents in all material respects the financial condition and results of operations of the Company.  Compl. ¶ 50.

Paragraphs 59 and 60 allege that Tsao certified the Company's IQ:06 Form 10-QSB for the quarter ended March 31, 2006, filed with the SEC.  In addition to making similar statements regarding the Company's performance and operations, by signing the document, Tsao attested to the accuracy and completeness of the Company's controls and procedures.  Compl. ¶¶ 59, 60.

Plaintiffs allege that these statements contained in the Company's Form 10-QSB and the SOX Certifications were materially false and misleading, and were known by Tsao to be false and misleading at the time, or Tsao was severely reckless in not knowing their falsity, due to the following adverse facts concealed from investors:

(a) Defendants failed to disclose "any fraud, whether or not material" relative to Knabb's prior history.  Knabb, as CEO of the Company, had a "significant role" in the "internal control over financial reporting" and at no time during the Class Period did Tsao ever disclose any adverse information about Knabb's past, including (i) involvement in numerous lawsuits bearing directly on Knabb's integrity, credibility, trustworthiness, abilities to carry out fiduciary duties, and financial

    abilities; (ii) any adverse information about Knabb's associations with convicted felons, securities fraudsters, and the like; and (iii) any adverse information [about] Knabb's history of associating, managing, and serving as a corporate officer or director with numerous companies that have consistently experienced irregular and suspicious trading activity leading to a sudden rise and precipitous collapse of stock price;

 (b) The Company failed to disclose that AMAX appears to have been acquired primarily because AMAX was secretly owned by defendant Tsao and his brother-in-law, Jerry Shih.  The AMAX acquisition was not conducted at arm's-length among disinterested and non-related parties, but rather constituted an interested deal among friends and family; and,

 (c) Defendants hid the failing results and true financial condition of Pegasus and never disclosed "weakness in the design or operation of internal control over financial reporting" in order to facilitate the effectiveness of the sham.

Compl. ¶ 61.

  For several reasons, these allegations are not sufficient to satisfy the PSLRA's requirement of particularized facts for scienter.  "To establish scienter in a securities fraud case alleging non-disclosure of potentially material facts, the plaintiff must demonstrate: (1) the defendant knew of the potentially material fact, and (2) the defendant knew that failure to reveal the potentially material fact would likely

mislead investors. The requirement of knowledge in this context may be satisfied under a recklessness standard by the defendant's knowledge of a fact that was so obviously material that the defendant must have been aware both of its materiality and that its non-disclosure would likely mislead investors." *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1261 (10th Cir. 2001).

The allegations described above do not elaborate regarding when or how Tsao learned about Knabb's past or that Tsao intentionally withheld Knabb's past from, or recklessly disregarded the importance of Knabb's past to, Company shareholders in order to deceive, manipulate, or defraud them. *Oxford Asset Management, Ltd. v. Jaharis*, 297 F.3d 1182, 1192 (11th Cir. 2002) (rejecting plaintiff's unsupported "bald assertions"); *Goldstein v. MCI WorldCom*, 340 F.3d 238, 251-53 (5th Cir. 2003) (bare allegations that the defendants "must have known" about the fraudulent conduct based on their corporate positions and the size of the potential write-off cannot suffice).

Nor can Plaintiffs satisfy their burden by alleging that Tsao "must have known" about the alleged "fraud" due to the position he held within the Company or because he signed the allegedly misleading SEC submissions. The allegation that Tsao was the Chief Executive Officer and the Chairman of the Board of Directors, and therefore he knew or must have known of Knabb's unsavory past, is insufficient to establish an inference of fraudulent intent that is at least as compelling as any opposing inference of nonfraudulent intent. *Rosenberg v. Gould*, 554 F.3d 962, 966 (11th Cir. 2009)

(citing *Tellabs*, 127 S.Ct. at 2505-06); *see, also, Cheney v. Cyberguard Corp.*, No. 98-6879-CIV, 2000 WL 1140306, *9 (S.D. July 31, 2000) (reiterating that a strong inference of scienter is not raised simply because individual defendants held positions of control, were involved in day-to-day activities, and signed SEC filings); *In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350, 1360-61 (S.D. Fla. 2005) (holding allegations that CFO signed false financial statements and that, by virtue of his position as CFO, he had access to and recklessly disregarded adverse financial information did not establish "severe recklessness"); *In re Smith Gardner Sec. Litig.*, 214 F. Supp. 2d 1291, 1303 (S.D. Fla. 2002) ("[m]ere allegations that Defendants held senior management positions, had access to inside information, and therefore must have known of the falsity of certain statements is insufficient to plead scienter"); *In re Republic Services, Inc. Sec. Litig.*, 134 F. Supp. 2d 1355, 1360 (S.D. Fla. 2001) holding mere allegation that defendants were "hands-on" senior officers of company and must have known of misstatements was insufficient to establish scienter); *In re Med/Waste, Inc. Sec. Litig*, No. 99-1684-Civ, 2000 WL 34241099, at *7 (S.D. Fla. Aug. 30, 2000) (holding allegations that defendant was CFO and thus had primary responsibility for preparation of the false financial statement failed to establish scienter).  As noted above, the Reform Act requires that a complaint state with particularity facts giving rise to a strong inference that each separate defendant acted with scienter with respect to each act or omission alleged.  *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d at 1341.  The Complaint fails to do so.

In their response brief, Plaintiffs argue that Tsao was intimately familiar with Knabb's "shenanigans" after working years with Knabb at prior pump-and-dump or defunct ventures.  DE 156 at 2. At the hearing, Plaintiffs characterized Knabb as "a serial pump and dumper, and basically the idea was Pegasus was another company where the stock was pumped up and there was nothing to the company, acquisitions were made to create the appearance of growth, money was made by the insiders, the company went nowhere, and the class members suffered when the truth came out." Transcript at 41.  "What we've alleged is that they have an extensive business background working together and that Mr. Tsao knew that Mr. Knabb was working at these related companies, Wireless Frontier, which is another pump and dump scam, Homeskills, which I mentioned.  They have a long history of working together, and the idea is the standard is severe recklessness.  Obviously if he was severely reckless in not knowing that, it certainly was put in issue by the fact that the 10K specifically touts Mr. Knabb's background with these entities and says – and views them as successes."  Transcript at 48.

Despite these assertions, Plaintiffs have provided no citations to any paragraphs of the Complaint that contain these purported allegations.  There is no allegation anywhere in the Complaint that Tsao knew Knabb before Knabb joined OTC Wireless, or demonstrating any connection between Knabb and Tsao, other than that they both worked at Pegasus.

Also, contrary to Plaintiffs' claims, the Complaint does not contain allegations detailing red flags that "should have repeatedly alerted him to his ignorance" regarding the inaccuracy in the Company's financial statements, or other suspicious circumstances or events.  Plaintiffs have not pled facts showing that the allegedly false statements or omissions in the published documents presented such a danger of misleading the public that Defendant Tsao knew about it or that it was so obvious that he must have known about it.  Moreover, alleged violations of SEC regulations or generally accepted accounting principles, without more, do not support a strong inference of scienter.  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006); *Melder v. Morris*, 27 F.3d 1097, 1103 (5th Cir. 1994) ("boilerplate averments that the accountants violated particular accounting standards are not, without more, sufficient to support inferences of fraud").

At the hearing, Plaintiffs' counsel argued that the best example demonstrating Tsao's scienter is in the last 8K issued where the terms and conditions of Tsao's resignation were mischaracterized.[2]  "Essentially Dr. Tsao agreed with Pegasus and Mr. Knabb that he would lie about the reasons for his departure, that he would say he had resigned, when, in fact, he was fired in exchange for money, millions of dollars in

---

[2] "On August 18, 2006, the Company filed Form 8-K, signed by Defendant Durland, announcing that the 'Board [] accepted the retirement of Chich-Hsing "Alex" Tsao, which included his resignation from all positions as officer and director.' Tsao did not voluntarily retire, but he was instead forced to leave the Company." Compl. ¶ 10.

cash, stock options, as well as unrestricted shares being provided to his family members.  The amount of money in question exceeds 2.8 million in cash alone exclusive of the stock options." Transcript, DE 188, at 38, *see also* Compl. ¶ 10.

Tsao responds that the 8K is not signed by him and does not support the contention that he agreed to falsely mischaracterize the circumstances of his departure.  Transcript at 50-51.  Plaintiffs acknowledge that Tsao did not sign the 8K at issue and seek to have the Court apply the group pleading doctrine to this allegation.  Transcript at 75.  As stated above, in order to even attempt to allege a fact under the group pleading doctrine, in addition to alleging that the published document made a material misstatement attributable to the Company at the time of public dissemination, Plaintiffs must make the specific allegation that Tsao, due to his high ranking position and direct involvement in the day-to-day business of the Company, was directly involved in controlling the content of the statements at issue.  This Plaintiffs have not done, and may never be able to do, because Tsao was no longer with the Company when the press release regarding his "retirement" was issued.  According to the Complaint, "[i]n exchange for Tsao's 'retirement' from the Company, pursuant to a Non-Compete and Retirement Agreement, effective August 8, 2006, the Company would give Tsao a payout of $2,810,000 over a five year period." Compl. ¶ 10.  As already stated, there are no specific allegations in the Complaint regarding Tsao's role at the Company.  Therefore, this allegation also fails to state a claim under Section 10(b) of the Exchange Act and Rule 10b-5, and fails to comply

with the pleading requirements mandated by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act. Since no primary violation has adequately been alleged, no control person claim has been stated.[3]

After a careful review of the totality of the factual allegations in the Complaint, the Court finds an inference of scienter cannot be drawn from the omissions or misrepresentations that are alleged on the part of Tsao. Accordingly, it is hereby

ORDERED AND ADJUDGED as follows:

1. The Motion of Defendant Chich-Hsing ("Alex") Tsao to Dismiss the Consolidated Amended Class Action Complaint [DE 139] is GRANTED without prejudice.

2. Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely granted when justice so requires." Therefore, in accordance with the usual practice upon granting a motion to dismiss, leave to file a Second Amended Complaint within 20 days of the date of this Order will be permitted.

---

[3] The Eleventh Circuit has held that in order to state a claim for control person liability under § 20(a)of the Exchange Act, 15 U.S.C. § 78t(a), a plaintiff must allege facts that establish (1) a primary violation of the securities laws by a controlled person; (2) that the defendant had the power to control the general business affairs of the controlled person; and (3) that the defendant had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability. *Theoharous v. Fong*, 256 F.3d 1219, 1227 (11th Cir. 2001); *Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 (11th Cir. 1996).

3. Defendant Chich-Hsing ("Alex") Tsao's Request for Judicial Notice in Support of Motion to Dismiss the Consolidated Amended Class Action Complaint [DE 142] is DENIED as moot.

4. Lead Plaintiff's Request for Judicial Notice in Support of Opposition to Defendant Tsao's Motion to Dismiss the Consolidated Amended Class Action Complaint for Violation of Federal Securities Laws [DE 157] and [DE 152] is GRANTED.  *Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53, (11th Cir. 2006).

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 21st day of September, 2009.

                                    KENNETH A. MARRA
                                    United States District Judge

copies to:

All counsel of record